

# RECEIVERSHIP AND MANAGEMENT AGREEMENT

This Receivership and Management Agreement (the "Agreement"), dated _____, 2024, shall become effective on the date the Circuit Court for the Third Judicial Circuit, County of Codington, State of South Dakota, approves the same ("Effective Date") and appoints HME Companies, LLC, a South Dakota limited liability company with a principal office in Brookings, South Dakota ("Manager") as receiver for the properties described herein.

## RECITALS

WHEREAS, Generations on 1st, LLC ("Generations"), a South Dakota limited liability company with its principal place of business in Fargo, North Dakota, is the owner of real property legally described as follows:

Parcel I:
Lot 1 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown, Codington County, South Dakota, according to the recorded plat thereof.

Parcel II:
Lot 2 of Ohtness' Subdivision of Lots 12, 13 and 14 in Block 17 of Watertown, AND the North 30 feet of the East 70 feet of Lot 11 in Block 17 of Watertown (commonly referred to as being in the original Plat), Codington County, South Dakota, according to the recorded plat thereof.

Parcel III:
Lot 3 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.

Parcel IV:
Lot 4 of Ohtness' Subdivision of Lots 12, 13, and 14 in Block 17 of Watertown (commonly referred to as being the Original Plat), Codington County, South Dakota, according to the recorded plat thereof.

Parcel V:
Lot 11, except the North 30 Feet of the East 70 Feet thereof, in Block 17, of the plat Entitled: "Watertown" Codington County, South Dakota, according to the recorded plat thereof

The Real Property or its address is commonly known as 26 1st Ave SW, Watertown, SD 57201. The Real Property tax identification number is 9582, 9583, 9580.

The real property described above shall be referred to herein as the "Generations Property".

WHEREAS, Parkside Place, LLC, ("Parkside"), a South Dakota limited liability company with its principal place of business in Fargo, North Dakota, is the owner of property legally described as follows:

Parkside Place Addition to the City of Watertown, Codington County, South Dakota, according to the recorded plat thereof.

Street Address:   8 2nd St. NE, Watertown, SD 57201
Tax ID:           9358

The real property described above shall be referred to as the "Parkside Property."

WHEREAS, Generations and Parkside executed in favor of Red River State Bank ("RRSB") numerous promissory notes secured in part by mortgages ("Loan Documents") on the Parkside Property and Generations Property (collectively, "the Properties").

WHEREAS, RRSB has commenced a foreclosure action against Generations in the Third Judicial Circuit, Codington County, South Dakota (Case No. 14CIV24-000064), alleging Generations has defaulted on its obligations to RRSB pursuant to the Loan Documents.

WHEREAS, RRSB has commenced a foreclosure action against Parkside in the Third Judicial Circuit, Codington County, South Dakota ("the Court") (Case No. 14CIV24-000065), alleging Parkside has defaulted on its obligations to RRSB pursuant to the Loan Documents.

WHEREAS, RRSB has petitioned the Court for appointment of a receiver, which petition was granted on _____, 2024 ("Receivership Order").

WHEREAS, RRSB has requested that the Court appoint Manager as the receiver pursuant to the Receivership Order and to also serve as the manager of the Properties in accordance with the terms of this Agreement.

WHEREAS, Manager has agreed to accept the appointment as receiver and to serve as the manager subject to the terms and conditions of the Receivership Order and any subsequent Receivership Order of the Court, and as provided for in this Agreement.

NOW, THEREFORE, as directed by the Court and in consideration of the mutual agreements between the parties hereto and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1.  <u>Engagement of Manager</u>. Subject to the terms, limitations, and conditions set forth in this Agreement and the Receivership Order, the Manager in consultation with Lender, will supervise and direct the operation of the Properties for the account of Generations and Parkside, and Manager hereby accepts such engagement and grant.  Relative to the foregoing, but not in limitation thereof, Manager shall have the right to determine operating policy, standards of operation, quality of service, and other matters affecting tenant relations or affecting the management and operation of the Properties, including, but not limited to, the rental rates, personnel management, and the expenditure of revenue generated from the Properties.  In the performance of its services under this Agreement, Manager is and will be acting in a representative capacity and Manager in no event shall be liable in any manner whatsoever if Gross Receipts are not sufficient to fund the operation of the Properties, for payment for services or materials under agreements entered into by Manager, for the performance, failure of performance, delay, loss or damage from any act or omission by a tenant, vendor, or other third party in connection with the operation of the Properties, or for acts of God, pandemic, epidemic, sabotage, vandalism, casualty losses, earthquake, flood, wind, riots, strikes, labor or employment difficulties, delays in transportation, subsurface or soil conditions, environmental conditions, inability to obtain

2

necessary services, materials or equipment, in ability to obtain permits or approvals or any similar circumstances beyond Manager's control.

      2.      <u>Funding and Expenses</u>. All funds required, or costs to be borne, under or pursuant to the terms of this Agreement shall be, unless otherwise specifically stated within this Agreement, the Receivership Order, or subsequent order of the Court, paid from gross receipts of the Properties. Manager shall have no responsibility to fund expenses or losses relating to the management of the Properties. Manager shall bear costs under this Agreement only when specifically required by the terms or provisions of this Agreement. Except as may be otherwise specifically provided in this Agreement, Manager shall bear all of its own overhead cost and expense; however, any other cost or expense under this Agreement which is paid for by Manager, in good faith, shall be reimbursed to Manager upon submission of written documentation of payment of such expense by Manager in accordance with the Receivership Order or subsequent order of the Court.

      3.      <u>Term</u>. This Agreement shall commence on the Effective Date and shall continue for a period of one (1) year unless terminated earlier by order of the Court. On the Effective Date, Manager shall commence management of the Generations Property and Parkside Property.

      4.      <u>Authority and Obligations of HME</u>. During the term of this Agreement, HME shall have the authority and obligation to:

(a) advertise the availability of the Properties for rent or for lease by placing signs on or near the Properties, advertising in media sources, including but not limited to local newspaper;

(b) negotiate, sign, renew or cancel rental agreements, including leases, for the Properties or any part thereof;

(c) collect rents and security deposits or other charges and expenses due or to become due under rental and lease agreements and to give receipts therefore. The rents, deposits and other charges and expenses shall be deposited in a separate deposit account for each Property within three (3) business days of receipt thereof;

(d) serve such notices as are necessary and appropriate on tenants including, but not limited to, termination notices, notices to pay rent or vacate and notices to comply with covenants or vacate;

(e) employ attorneys for the purpose of enforcing Generations' and Parkside's rights under rental agreements and leases and to institute and prosecute legal actions to evict tenants to recover possession of the Properties, and to recover rents and other sums due, and to settle, compromise and release such claims, actions or suits and to reinstate such tenancies as HME believes is appropriate for the benefit of Generations and Parkside;

3

(f) provide all services reasonably necessary for the proper management and maintenance of the Properties including periodic inspections, supervision of maintenance, arrangement for improvements, alterations, pest control, and repairs as may be required by Generations and Parkside or deemed necessary by Manager for proper upkeep and rental of the Properties;

(g) purchase such supplies and enter into such contracts for repair, maintenance, and alteration of the Properties as may be necessary in the discretion of Manager to provide proper upkeep for the Properties, only upon prior approval by RRSB;

(h) hire, supervise and discharge all qualified, independent contractors required in the operation, maintenance, and upkeep of the Properties;

(i) execute service contracts for electricity, gas, water, cable, telephone, window cleaning, rubbish hauling, snow removal, cleaning, general ground maintenance and other services or utilities for the operation, maintenance and safety of the Properties as Manager may deem necessary;

(j) pay from receipts all operating expenses and such other expenses, including but not limited to, property taxes, special assessments, and insurance premiums;

(k) maintain accurate and complete accounting records of all moneys received and disbursed in connection with the management of the Properties;

(l) timely prepare and facilitate the filing of financial statements and reports required by this Agreement or the Receivership Order; and

(m) perform all other duties required by the Receivership Order and this Agreement.

5. Representations and Warranties of Manager.

(a) Manager is a South Dakota limited liability company duly organized, validly existing and in good standing under the laws of the State of South Dakota, where the Properties are located.

(b) Manager has full power, authority, and legal right to perform and observe the provisions of this Agreement.

(c) This Agreement constitutes a valid and binding obligation of Manager fully enforceable in accordance with its terms and does not constitute a breach of or default under any other agreement to which Manager is a party or any of its assets are bound or affected.

(d) During the term of this Agreement, Manager will, at its own expense, obtain and keep in full force and effect its limited liability company existence, and rights required in Receivership Order for it to observe all of the terms and conditions of this Agreement.

6. <u>No Interference with Manager's Performance</u>. Manager, pursuant to the Receivership Order and any subsequent Court order, on performing each and every covenant, undertaking, agreement and condition on the part of Manager to be performed, observed and kept under this Agreement, shall and may peaceably and quietly operate the Properties in accordance with the terms of this Agreement and the Receivership Order for the entire period stipulated herein, free from disturbance by any person.

7. <u>HME Compensation and Expenses</u>.  As compensation for the services rendered by Manager under this Agreement, HME shall be paid the income and expenses identified on the attached <u>Exhibit A</u>.

8. <u>Bank Accounts</u>. On behalf of Generations and Parkside, Manager shall manage and operate, in Manager's name, separate bank accounts at a bank approved by Manager with Manager being the only party authorized to draw from said accounts.

9. <u>Reimbursement of Taxes and Assessments.</u> All taxes and similar assessments (other than Manager's income taxes) levied against any reimbursement or fees payable to Manager under this Agreement shall be reimbursed to Manager. Such amounts shall include any sales, use, excise or similar tax that is based upon gross receipts or income imposed upon Manager.

10. <u>Bond</u>. The cost of providing a bond for Manager, if required by the Receivership Order or any subsequent order of the Court, shall be paid from gross receipts of the Properties.

11. <u>Financial Reports and Accounting</u>.

(a) Manager shall maintain an accurate accounting system in connection with its management of the Properties. The books and records shall be maintained either at the principal office of Manager, or at the offices of Manager's independent accounting firm, at Manager's option. Generations, Parkside, and RRSB shall have the right and privilege of examining said books and records at any reasonable time. Generations, Parkside, and RRSB may, at their sole cost and expense, obtain an annual audit performed by independent certified public accountants. All tax returns and filings including income tax returns applicable to the Properties shall be the responsibility of Parkside and Generations. Manager will provide to Generations, Parkside, and RRSB a copy of the financial reporting that is required to be submitted to the Court pursuant to the Receivership Order. All books, records, bills, receipts, bank books, check books, correspondence, lists, files and books of accounts related to the management of the Properties shall at all times be safely kept and preserved.

(b) Parkside and Generations are required to file all required Internal Revenue Service (IRS) forms and returns and are responsible for all IRS requirements related to the Properties except Manager shall submit as required by the IRS at the conclusion of each calendar year a Form 1099 indicating the total income received from the Properties.

5

    (c)    Manager shall prepare and submit such other reports required by the Receivership Order and this Agreement.

    (d)    Manager shall provide an annual operating budget to RRSB for review and approval annually. (the "Approved Budget")

12. <u>Insurance.</u> Manager shall be responsible for insuring the Properties for their full insurable value against all applicable risks as determined by RRSB which shall be an expense of the Properties. Manager also agrees to maintain any other policies of insurance deemed necessary by RRSB or the Court.

13. <u>Indemnification.</u> Manager will be entitled to all defenses and immunities provided under South Dakota law and common law for acts or omissions within the scope of the receivership appointment and no person, other than a successor receiver duly appointed by the Court, shall have a right of action against the Manager to recover receivership property or the value thereof.

14. <u>Relationship and Authority.</u> The parties intend by this Agreement to create a relationship of principal and agent between them. RRSB is interested only in the results to be achieved, and the conduct and control of how and when the services under this Agreement are performed lie solely with Manager, subject to the specifications, timing, needs and requirements applicable thereto, though RRSB expects Manager to provide and perform its services in a competent and professional manner. Manager and RRSB shall not be construed as joint venturers or partners of each other, and neither shall have the power to bind or obligate the other except as set forth in the Agreement, but Manager is clothed with such additional authority and powers as may be necessary to carry out the spirit and intent of this Agreement. This Agreement shall not be deemed at any time to be an interest in real estate or a lien of any nature against the Properties. The rights of the Manager shall be at all times subject and subordinate to all mortgages and security interests which may now or hereafter be outstanding, and to all renewals, modifications, consolidations, replacements and extensions thereof. This clause shall be self-operative, and no further instrument of subordination shall be required by any mortgage. RRSB acknowledges and agrees that Manager is free to contract to provide similar or other services for others, while Manager is under contract with RRSB, though Manager agrees that it will not engage in any activity that conflicts with RRSB's interests or Manager's duties or obligations under this Agreement.

15. <u>Termination</u>.  This Agreement will be terminated upon cancellation of the Receivership by the Court. In addition, Manager may seek Court approval to terminate this Agreement prior to expiration of the term set forth in paragraph 3 herein. In the event this Agreement is terminated before completion of the term set forth in paragraph 3, and said termination is not requested by Manager and is not the result of Manager's default of this Agreement or the Receivership Order, an early termination fee will be paid to Manager in the amount of $2,400.

16. <u>Foreign Investments in Real Property Tax Act (FIRPTA)</u>.  Pursuant to the Internal Revenue Code Section 1441, the deduction of a withholding tax on all fixed or determinable gross income shall be required of any non-resident alien individual, fiduciary, foreign partnership, or foreign corporation unless exempt under provisions provided under said IRS Section.  If RRSB is a non-resident alien individual, fiduciary, foreign partnership, or foreign corporation, HME will require a written statement from either a CPA or U.S. Tax Attorney. RRSB is not a non-resident alien individual, fiduciary, foreign partnership, or foreign corporation.

17. <u>Administration and Construction</u>.  This Agreement shall be administered and construed in accordance with the following provisions:

    (a)   <u>Notices</u>.  Any and all notices or other communication provided for in this Agreement shall be given in writing by registered or certified mail which, unless otherwise designated by a party, shall be addressed to the following addresses:

    To RRSB:　　　　　　　　　Red River State Bank
    　　　　　　　　　　　　　　PO Box 25
    　　　　　　　　　　　　　　Halstad, MN 56548

    To Counsel for RRSB:　　　　Caren L. Stanley (SD #4188)
    　　　　　　　　　　　　　　Vogel Law Firm
    　　　　　　　　　　　　　　218 NP Avenue
    　　　　　　　　　　　　　　PO Box 1389
    　　　　　　　　　　　　　　Fargo, ND  58107-1389

    　　　　　　　　　　　　　　Anthony M. Hohn
    　　　　　　　　　　　　　　Davenport, Evans, Hurwitz & Smith, L.L.P.
    　　　　　　　　　　　　　　206 West 14th Street
    　　　　　　　　　　　　　　P.O. Box 1030
    　　　　　　　　　　　　　　Sioux Falls, SD 57101-1030

    To Generations:　　　　　　Generations on 1st
    　　　　　　　　　　　　　　1405 1st Avenue North
    　　　　　　　　　　　　　　Fargo, ND 58102

    To Counsel for Generations : Mark A. Schwab (SD ID#5422)
    　　　　　　　　　　　　　　Schwab Thompson & Frisk
    　　　　　　　　　　　　　　820 34th Avenue E., Ste 200
    　　　　　　　　　　　　　　West Fargo, ND 58078

    To Parkside :　　　　　　　Parkside Place, LLC
    　　　　　　　　　　　　　　1405 1st Avenue North
    　　　　　　　　　　　　　　Fargo, ND 58102

7

|  |  |
|---|---|
| To Counsel for Parkside : | Mark A. Schwab (SD ID#5422) |
|  | Schwab Thompson & Frisk |
|  | 820 34th Avenue E., Ste 200 |
|  | West Fargo, ND 58078 |
| To HME: | HME Companies, LLC |
|  | 432 5th Street |
|  | Brookings, SD  57006 |
|  | Attn:  Lane Warzecha |
| To Counsel for HME: | Marli Schippers |
|  | Nooney & Solay, LLP |
|  | 326 Founders Park |
|  | Rapid City, SD 57701 |

As to registered mail, notice shall be deemed served when properly addressed and duly accepted for mailing as registered mail in a branch of the United States Postal Service.  As to certified mail, notice shall be deemed served when duly deposited in a United States Postal Service mailbox or at a branch of the United States Postal Service.

(c) <u>Captions</u>.  The captions on the paragraphs and subparagraphs of this Agreement are inserted only for the purpose of convenient reference. The captions shall not be used to construe or interpret the Agreement nor to prescribe the scope or intent of the Agreement.

(d) <u>Severability</u>.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect its other provisions.  The Agreement shall be construed in all respects as if such invalid or unenforceable provision was omitted.

(e) <u>Entire Agreement</u>.  This Agreement constitutes the complete and entire understanding of the parties concerning the management, maintenance and renting of the Properties.  Neither party shall be bound by or be liable for any statements, warranties, guarantees, or representations not set forth in this Agreement which may have been made by any broker, agent, employee or other person representing or purporting to represent a party to this Agreement.

(f) <u>Modification</u>.  No change or modification of this Agreement shall be valid unless the same be in writing and signed and delivered by all of the parties to this Agreement.

(g) <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be considered as an original of the Agreement.  All executed counterparts shall constitute, and shall have the force and effect, of one and the same document, and shall be binding upon those who execute the Agreement, regardless of whether all parties execute the same document.

(h) <u>Persons Bound by this Agreement</u>. This Agreement shall be binding upon the parties and their successors in interest. The rights and obligations of any party to this Agreement may be exercised or satisfied by that party's legal representative.

(i) <u>Governing Law</u>. The provisions of this Agreement shall be governed by the laws of the State of South Dakota.

(j) <u>Place of Venue</u>. The parties agree that all disputes relating to this Agreement shall be venued in the Third Judicial Circuit Court, Codington County, South Dakota.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date herein first above written.

**RED RIVER STATE BANK**

By:_____

Its:_____

Date:_____

**HME Companies, LLC**

By:_____

Its:_____

Date:_____

# **EXHIBIT A**

<u>HME Compensation and Expenses</u>:

- <u>Management Fee.</u> Generations shall pay Manager a monthly Management Fee of $ 5,544.00  plus applicable sales tax. Parkside shall pay Manager a monthly Management Fee of $2,856.00 plus applicable sales tax. Accounting Services shall be included in the monthly Management Fee for each property.

- <u>Receivership Fee.</u> Generations shall pay Receiver a monthly Receiver Fee of $4,620.00 plus applicable sales tax. Parkside shall pay Receiver a monthly Receiver Fee of $2,380.00 plus applicable sales tax.

- <u>Onboarding Fee.</u> Properties shall pay HME a one-time Onboarding Fee upon execution of this agreement. The Onboarding Fee shall be Five Thousand Four Hundred Dollars and No Cents ($5,400.00), plus applicable sales tax.

- <u>Marketing Services Fee.</u> HME shall provide a Master Action Plan (MAP) annually which shall constitute the annual budget for Marketing Services. Owner shall approve and pay the monthly amount detailed in the MAP and the Approved Budget.

- <u>Reimbursables Expenses.</u> HME shall be reimbursed for all reasonable expenses incurred outside of ordinary Management and Administrative Service Fees at an hourly rate established by HME, the hourly rate as of the date of this agreement is $65/hour. Services already covered under an existing agreement between same parties shall be excluded from this reimbursement carve out. Services performed on commercial spaces shall be included in the reimbursables expenses. Owner shall approve any reimbursable expenses prior to HME incurring them.

- All fee payments are due within ten (10) days of the end of the month to which the Management and Administrative Service Fee payment applies (e.g. the Management and Administrative Services Fee payment for January is due by February 10th)