IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| In re: | ) | Case No. 25-30003 |
| | ) | (Chapter 11) |
| PARKSIDE PLACE, LLC | ) | |
| | ) | |
| Debtor | ) | |
| | ) | (*Joint Administration Motion Pending*) |

**MOTION FOR LEAVE TO USE CASH COLLATERAL**

Come now Generations on 1st, LLC ("Generations") and Parkside Place, LLC ("Parkside") (collectively, the "Debtors," and each a "Debtor"), by and through undersigned proposed counsel, pursuant to Section 363 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and move this Honorable Court for leave to use cash collateral on an interim and final basis, and in support thereof state as follows:

**I.      Introduction**

The Debtors in these cases—alongside their principal and others—set out, not too many years ago, to solve a housing shortage in Watertown, South Dakota. And no matter the acridity that may have tainted relations between the Debtors and their lender (something it is hoped—rather sincerely—to be mendable through the chapter 11 process), a general consensus exists that Generations and Parkside succeeded in these goals. Two glowing, modern apartment buildings now stand in Watertown, with generous occupancy rates, denoting—literally and symbolically— the virtues upon which these two Debtors will reorganize and the halls that have become a home to their tenants.

1

Yet operating apartment buildings does, of course, take money. Though there is little question but that both assets have positive cash flow, there do nonetheless exist provisions in loan documents upon which rental proceeds are assigned to Red River State Bank ("RRSB"). These rents do, in turn, constitute the cash collateral of the two Debtors' estates. And it is altogether appropriate to permit use of those monies, during the pendency of these cases, so as to ensure the buildings remain in good repair, tenants remain well cared for, and reorganizations prove viable.

### II.     Standard

The permitting of cash collateral usage is specifically contemplated by Section 363(e) of the Bankruptcy Code, which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

### III.     Argument: The Debtors Should be Permitted to Use Cash Collateral

The Debtors propose that they be permitted to use cash collateral, on an interim and final basis, while furnishing RRSB with replacement liens sufficient to ensure the bank's position remains as robust as it was when the Debtors sought bankruptcy relief. Reorganized and profitable entities will be better able to make payments to RRSB under chapter 11 plans, rendering the use of cash collateral in the best interest of both the borrowers and the lender whilst also furnishing a path toward payment of other creditors' claims through the same plan structure.

2

As noted by the United States Court of Appeals for the Eleventh Circuit, "[a]dequate protection is a means of preserving a creditor's interest in secured collateral subject to post-petition use by the debtor." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 686 (11th Cir. 1993). What constitutes adequate protection is determined on a case-by-case basis. *See, In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).

Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e). *See also, United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim).

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) "requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the … use … under section 363 of this title … results in a decrease in the value of such entity's interest in such property," (ii) "providing … an additional or replacement lien to the extent that such … use … results in a decrease in the value of such entity's interest in such property," or (iii) "granting such other relief . . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. § 361. *See also*, *In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545–46 (Bankr. E.D. Va. 1995) ("Section 361 of the Code provides three non-exclusive means of providing adequate protection. These alternatives include requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property. Alternatively, the debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. Lastly, adequate protection may be provided

by granting other relief that will result in the indubitable equivalent of the interest in the property.") (citing 11 U.S.C. § 361(3)).

Based on the latest-filed reports from a state court receiver that helmed the two apartment buildings pre-petition, both assets operate on a cash-positive basis. For November 2024, Parkside had gross revenues of $32,701.69 against expenses of $14,777.31, for bottom line income of $17,924.38. *See* Parkside Receiver's Report, attached hereto as Exhibit A. During the same period, Generations saw gross revenue of $61,339.97 against expenses of $22,086.23, resulting in net income of $39,253.74.

While these numbers will, almost assuredly, not be precisely replicated in future months, the general flow of tenant rents is unlikely to materially change during the pendency of these cases. So, too, are expenses likely to remain somewhat static. The Debtors suspect new property management will be able to operate in a more economically efficient fashion. And the Debtors do, too, suspect that line items for "Snow Removal" will prove less essential once these cases have pended for a certain period of time. So, too, may utility usage rates fluctuate with seasons. But, on the whole, these are profitable operations that show every sign of remaining profitable whilst reorganizing.

Ongoing profitability does, of course, well protect RRSB. And the alternative—allowing two new buildings to go without regular maintenance, allowing utilities to go unpaid, allowing tenant concerns to go unaddressed, and allowing snow to be unplowed for the duration of the winter—is clearly not in the best interest of RRSB, the Debtors or, perhaps most importantly, the tenants themselves.

To be sure, RRSB is already in a secure, well-protected posture. And while there may be some interest in making payments during the pendency of this case, such will be every bit an effort

4

to staunch the flow of interest on certain disputed debt facilities and far less a necessity of furnishing adequate protection. RRSB is, no doubt, adequately protected, with replacement liens being the appropriate mechanism to ensure such protection not falter while reorganizational efforts are underway.[1]

### IV.    Conclusion

WHEREFORE, the Debtors respectfully prays this Honorable Court (i) permit Generations and Parkside to use all of the cash collateral in existence on the petition date and all assigned rents collected thereafter; (ii) give RRSB an automatically-perfected replacement lien on the Debtors' post-petition revenues and receivables (but not on any claims arising under Chapter 5 of Title 11 of the United States Code), to the extent of any diminution of the cash collateral; (iii) extend such post-petition lien to cover funds turned over by the former state court receiver (but not security deposits held for the benefit of tenants); (iv) enter an order permitting such relief on an interim basis, with said order being immediately effective, per the allowance of Federal Rule of Bankruptcy Procedure 6004(h); (v) direct the interim order become final after the expiration of 21 days if no party in interest timely objects to the same; and (vi) afford such other and further relief.

*[Signature on Following Page]*

---

[1] While neither Generations nor Parkside presently possesses any cash assets, it is reasonably anticipated the state court receiver will soon turnover monies being held for both entities. These funds have been held by the receiver, in established accounts at Dacotah Bank, and are believed to exceed $200,000.00 for Parkside and $330,000.00 for Generations. Insofar as these are monies that have been held at a bank other than RRSB, and insofar as it is not believed RRSB has an account control agreement for these accounts, the funds are not subject to a properly-perfected lien and, as such, do not constitute cash collateral. S.D. Codified Laws § 57A-9-314. However, in the interests of avoiding litigation over this issue, and as a small gesture of good faith at the outset of these cases, the Debtors would be amenable to having any replacement liens (to the extent replacement liens actually arise) encumber these monies once turned over to Generations and Parkside.

5

                                            Respectfully Submitted,

Dated: January 7, 2025          By:     /s/ Maurice B. VerStandig
                                                 Maurice B. VerStandig, Esq.
                                                 The Dakota Bankruptcy Firm
                                                 1630 1st Avenue N
                                                 Suite B PMB 24
                                                 Fargo, North Dakota 58102-4246
                                                 Phone: (701) 394-3215
                                                 mac@dakotabankruptcy.com
                                                 *Proposed Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of January, 2025, a copy of the foregoing was served electronically upon filing via the ECF system. A copy of any notice of an ensuing hearing that may be issued (with such likely taking the form of an order expediting consideration of this motion and other first day motions) will, in turn, be mailed to the twenty largest unsecured creditors (excluding insiders) in each case, with a certificate of service to follow thereafter.

                                                                /s/ Maurice B. VerStandig
                                                                Maurice B. VerStandig